IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEPHNE GLAUB                                                                         PLAINTIFF

v.                              CIVIL NO. 06-5060

LINDA S. MCMAHON,[1] Commissioner
Social Security Administration                                                      DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Stephne Glaub brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).

**Procedural Background:**

The applications for DIB and SSI presently before this court were filed on January 24, 2003, alleging an inability to work since June 12, 2002, due to back pain and depression. (Tr. 90-92, 272-274). An administrative hearing was held on March 11, 2004. (Tr. 40-61). Plaintiff was present and represented by counsel.

---

[1] Linda S. McMahon became the Social Security Commissioner on January 20, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

At the time of the administrative hearing, plaintiff was fifty years of age and obtained a high school diploma. (Tr. 44). Plaintiff has also attended four years of college but has not earned a degree. (Tr. 44,107).

By written decision dated May 19, 2004, the ALJ found that plaintiff has an impairment or combination of impairments that are severe. (Tr. 27). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments do not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 27). The ALJ found plaintiff retained the residual functional capacity (RFC) to perform work at all exertional levels with some mental limitations. Specifically, the ALJ found plaintiff had moderate limitations in the following areas: the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to appropriately interact with the public; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 27-28). The ALJ determined plaintiff is able to perform work where interpersonal contact is routine but superficial, the complexity of tasks is learned by experience with several variables, judgment is used within limits, supervision required is little for routine tasks but detailed for non-routine tasks. With the help of a vocational expert, the ALJ determined plaintiff is able to perform other work as a food prep, a packager and an assembler. (Tr. 28, 160-161).

Plaintiff appealed the decision of the ALJ to the Appeals Council. After reviewing the additional evidence submitted by plaintiff, the Appeals Council denied plaintiff's request for review on March 2, 2006. (Tr. 4-7). When the Appeals Council declined review, the ALJ's

decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties have filed appeal briefs and this case is before the undersigned for report and recommendation. (Doc. # 7,8).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

3

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

**Discussion**:

Of particular concern to the undersigned is the ALJ's failure to properly consider plaintiff's mental impairments. The evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996). Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased. *Id*. Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse." *Id.* Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that

they may actually be more impaired than their symptoms indicate. *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy,* 683 F.2d at 1147.

With regard to plaintiff's alleged mental impairments, the pertinent medical evidence in this case reflects the following. In treatment notes dated March 18, 2003, plaintiff reported becoming increasingly withdrawn. (Tr. 267). Dr. Larry Tuttle noted plaintiff was crying and encouraged plaintiff to see someone at Ozark Guidance Center (OGC) for her depression.

On March 26, 2003, plaintiff underwent a diagnostic interview at OGC. (Tr. 218-219). Plaintiff stated she was at the OGC because her doctor referred her. Plaintiff reported she was feeling depressed. Plaintiff reported she had worked for a hospital for twenty-five years but was fired in 2001, for attendance problems. Plaintiff reported she had been unable to get another job in two years because she would have to tell potential employers that she was fired from her last job because of absenteeism. Plaintiff reported that she just did not care anymore and had been unable to even keep her house clean. She further reported that her back pain exacerbated her emotional problems. Upon observation, Ms. Thomas noted plaintiff was appropriately dressed but with poor self care. Ms. Emily Thomas, BS, Counselor Intern, noted plaintiff was cooperative but her mood was depressed and tearful. Plaintiff's thought content/perceptions appeared normal. Ms. Thomas noted plaintiff's behavior/motor activity appeared normal with the exception of breaking eye contact for extened periods and repeated efforts to calm herself

with deep breathing exercises. Plaintiff's memory was intact and her intelligence was estimated to be above average. Plaintiff stated that she wished she were in heaven but had no thoughts of hurting herself. Plaintiff was diagnosed with adjustment disorder with mix anxiety and depressed mood. Plaintiff's global assessment of functioning (GAF) rating was a 48. Ms. Thomas opined plaintiff would benefit greatly from therapy and may also benefit from the new pain support group.

Individual therapy notes from OGC dated April 10, 2003, indicate plaintiff was still concerned about money and that she wanted to use the sessions for venting. (Tr. 216). Ms. Thomas noted plaintiff exhibited poor hygiene and self care. Ms. Thomas noted plaintiff's memory was intact and that her behavior was alert, agitated and restless. Plaintiff was taking medications as prescribed and Ms. Thomas recommended plaintiff continue to receive mental health services. Ms. Thomas opined plaintiff was unable to sustain substantial gainful employment or to live independently without support.

On April 15, 2003, plaintiff underwent a mental status and evaluation of adaptive functioning performed by Dr. Virginia R. Krauft. (Tr. 220-226). Dr. Krauft noted plaintiff's appearance and hygiene were attractive but there was a noticeable body odor. Plaintiff reported that she did not want to be in the world but did not have "the guts" to put a gun to her head. (Tr. 220). Dr. Krauft noted plaintiff had been evaluated in December of 2001, and that the examiner had opined plaintiff could not work an eight hour day due to physical and emotional energy drain and difficulty concentrating on work tasks. (Tr. 186, 222). After evaluating plaintiff, Dr. Krauft diagnosed plaintiff with Axis 1: dysthymia, due to length of depression; Axis II dependent personality disorder, histrionic personality feautres; and gave her a GAF score of 38. With

6

regard to adaptive functioning, Dr. Krauft noted plaintiff was attentive and that she did not observe a problem in the area of concentration, persistence and pace. (Tr. 226).

On September 9, 2003, plaintiff reported she had not been able to find a job, was withdrawn and was staying to herself. (Tr. 266). Dr. Tuttle noted plaintiff was crying. Dr. Tuttle referred plaintiff to OGC again but notes plaintiff refused to go to OGC.[2] Dr. Tuttle encouraged plaintiff to go out and offered to refer her for treatment.

Plaintiff also submitted additional medical evidence from the OGC to the Appeals Council.[3] This evidence consisted of therapy notes dated March 31, 2003, and April 1, 2003, and a discharge notice dated July 3, 2003, from OGC. On March 31, 2003, Ms. Thomas noted plaintiff's overall progress was improving but that she was still unable to sustain substantial gainful employment.

On April 1, 2003, Dr. Stanley Rest reported that plaintiff concluded her emotional pain was far greater than her physical pain and decided that the pain group was not a good match. (Tr. 294). Dr. Rest indicated plaintiff had limited progress and that she should return to seeing her therapist.

The discharge notice dated June 30, 2003, indicated plaintiff's current GAF was 48 and that her progress was fair. The discharge notice indicates plaintiff needs further treatment but refused to continue with the pain group due to "cluster B traits."

---

[2] We note the treatment notes are difficult to read but it appears plaintiff reported OGC wanted money to be seen.

[3] We note we consider this evidence, even though submitted after the date of the ALJ's decision, as the Appeals Council considered it before denying review. (Tr. 4-7). *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

According to the Diagnostic and Statistical Manual of Mental Disorders, a GAF of thirty-eight indicates "some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work....)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000). Further, a GAF of forty-eight indicates the presence of "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* However, the ALJ has failed to address or consider the GAF's assessed by the various examining psychologists/psychiatrists. Because notes from plaintiff's counseling session indicate an ongoing depressed mood/anxious affect with limited progress, we believe that the case should be remanded to allow the ALJ to consider this evidence, and seek clarification regarding plaintiff's mental capabilities. In so doing, the ALJ should request an explanation of plaintiff's GAF score from the examining psychologists/psychiatrists.

There is also some question about plaintiff's ability to perform an eight-hour work day. In December of 2001, Dr. Letitia C. Hitz opined plaintiff maintained "insufficient physical/emotional energy for [an] eight-hour day." (Tr. 189). Plaintiff's therapist also opined that plaintiff was unable to sustain substantial gainful employment in March of 2003. (Tr. 216, 293). We believe the ALJ should request that the examining psychologists/psychiatrists address whether plaintiff is able to perform an eight-hour work day, five days a week and to opine as to how many days plaintiff will miss due to her mental impairments.

AO72A
(Rev. 8/82)

After considering this evidence, the ALJ should then re-evaluate plaintiff's RFC and specifically list in a hypothetical to a vocational expert any limitations that are indicated in the RFC assessments and supported by the evidence.

**Conclusion:**

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).  **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of February 2007.

/s/  *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)